WHITEMAN
OSTERMAN
& HANNA LLP

Attorneys at Law
*www.woh.com*

One Commerce Plaza
Albany, New York 12260
518.487.7600 phone
518.487.7777 fax

Heather D. Diddel
Partner
518.487.7600 phone
*hdiddel@woh.com*

March 30, 2021

**VIA ECF**
Honorable Allyne R. Ross
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   RE: Marieta Besera v. GreatAuPair, LLC, Marc Hom, and Marie Louise Hom,
      Docket No. 20-cv-3862 (ARR)(SJB)

Dear Judge Ross:

   This firm represents Defendants Marc Hom and Marie Louise Hom (the "Homs") in the above-captioned action filed by Marieta Besera ("Plaintiff"). The Homs write pursuant to Rule III(A) of Your Honor's Individual Practices and Rules to respectfully request a pre-motion conference to seek the Court's permission to move to compel Plaintiff to arbitrate her claims against them or in the alternative to dismiss Plaintiff's complaint. Plaintiff was the Homs' au pair through former Defendant GreatAuPair, LLC's ("GreatAuPair") au pair program. Plaintiff has asserted claims against the Homs and GreatAuPair under the federal Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL") and the Trafficking Victims Protection Reauthorization Act ("TVPRA"). On November 20, 2020, GreatAuPair moved to compel arbitration under its agreement with Plaintiff. (Dkt. Nos. 25 and 33.) Thereafter, a stipulation of dismissal was entered whereby Plaintiff's claims against GreatAuPair were dismissed without prejudice. (Dkt. No. 36). As detailed below, it has become indisputable that Plaintiff's remaining claims against the Homs are encompassed by and subject to the binding arbitration agreement between GreatAuPair and Plaintiff pursuant to the Federal Arbitration Act ("FAA"). Alternatively, Plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(c).

**A. Background**

   This matter arises out of and is the result of Plaintiff's time with the Homs as an au pair from October 25, 2018 through November 1, 2019. (See Amended Complaint ("Am. Compl."), Dkt. No. 12 ¶¶ 35-38, 45-47, 64, 112.) GreatAuPair sponsored Plaintiff's J-1 Visa application and through Great Au Pair's program, she was placed with the Homs, her host family. (Id. ¶ 38, 42-43.)

Marieta Besera v. GreatAuPair, LLC, Marc Hom, and Marie Louise Hom
Docket No. 20-cv-3862 (ARR)(SJB)
March 30, 2021                                                                Page **2** of **4**

On August 17, 2017 and August 18, 2017, respectively, the Homs and Plaintiff each entered into an agreement with GreatAuPair. (A copy of Plaintiff's agreement with GreatAuPair is attached as "Exhibit A" and a copy of the Homs' agreement with GreatAuPair is attached as "Exhibit B".) The agreements detailed the parameters of the J-1 Exchange Visitor Program, Plaintiff and the Homs' participation in GreatAuPair's program, and the specific requirements for Plaintiff, as au pair, to be placed with the Homs, the host family. (See Exs. A, B.) These requirements included Plaintiff's working hours and compensation. (Id.) Both agreements contained an arbitration provision covering any dispute concerning the performance, enforcement or interpretation of the agreement. (See Ex. A, pg. 9, Ex. B, pg. 8). Separately, the Homs and Plaintiff entered into a "Host Family—Au Pair Agreement," with one another. (A copy of the Host Family- Au Pair Agreement is attached as "Exhibit C".) This agreement, which is on GreatAuPair's letterhead, was provided to Plaintiff and the Homs by GreatAuPair as a requirement of the U.S. Department of State. (Id.) It contains the same language regarding Plaintiff's work hours and compensation that is contained in Plaintiff and the Homs' agreements with GreatAuPair. (See Ex. A, pg. 2, Program Requirements, Ex. B, pg. 1-2, Department of State Program Requirements and Ex. C.)

**B.      Plaintiff must arbitrate her claims against the Homs**

Under the FAA, "[w]hether a dispute is arbitrable comprises two questions: (1) whether there exists a valid agreement to arbitrate at all under the contract in question ... and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." Hartford Acc. & Indem. Co. v. Swiss Reins. Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001) (internal quotations omitted). Wage and hour claims brought pursuant to the FLSA and NYLL are subject to arbitration provisions. See, e.g., Raniere v. Citigroup Inc., 533 F. App'x 11, 14 (2d Cir. 2013); Zendon v. Grandison Mgmt., Inc., 18-cv-4545 (ARR)(JO), 2018 WL 6427636, at *3 (E.D.N.Y. Dec. 7, 2018) (granting motion to compel arbitration of FLSA, NYLL, and TVPRA claims).

In this matter, Plaintiff's claims against the Homs are with respect to her work hours and compensation. These topics are directly addressed by the two respective agreements with GreatAuPair, which contain arbitration provisions. Accordingly, Plaintiff's claims clearly fall within the scope of the arbitration provision in the GreatAuPair agreements. Plaintiff must be compelled to arbitrate her claims against the Homs under her agreement with GreatAuPair despite the Homs not being a signatory thereto. Non-signatories may enforce an arbitration clause where, as here: "(1) the issues the non-signatory seeks to resolve in arbitration are factually intertwined with [an] agreement that the signatories have signed, and (2) the non-signatory seeking arbitration and the signatory opposing arbitration have a sufficiently close relationship." Salanzo v. Lace Entm't Inc., No. 13 Civ. 5600 (LGS), 2014 WL 3583195, at *5 (S.D.N.Y. July 18, 2014), citing Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 127 (2d Cir. 2010). There also needs to be a "relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with the signatory party must be stopped from denying an obligation to arbitrate a similar dispute with the non-signatory party as well." Ragone, 595 F.3d at 127, quoting Sokol Holdings, Inc. v. BMB Munai, Inc., 542 F.3d 354, 359 (2d Cir. 2008).

Marieta Besera v. GreatAuPair, LLC, Marc Hom, and Marie Louise Hom
Docket No. 20-cv-3862 (ARR)(SJB)
March 30, 2021                                                                 Page **3** of **4**

Here, Plaintiff has already stipulated that her claims against GreatAuPair are subject to arbitration under their agreement. She has made the same claims against the Homs and GreatAuPair and has even alleged that they are joint employers and conspired together to violate the TVPRA. (See Am. Compl. ¶¶ 41, 50-57, 66-95, 99-111.) On that basis alone, Plaintiff cannot reasonably assert that her claims against the Homs are factually different and distinct from her claims against GreatAuPair such that they are not subject to arbitration. They are not factually distinct and should be subject to Plaintiff to GreatAuPair's arbitration provision. Plaintiff was sponsored for a J-1 Visa by GreatAuPair which allowed Plaintiff to be placed with the Homs, her host family, under GreatAuPair's au pair program. (See Exs. A-C.) GreatAuPair administers the au pair program in accordance with the U.S. Department of State's J-1 Exchange Visitor Program (Id.) It outlines for the au pairs and the host families, in their respective agreements, the terms of its program, including the requirements for the au pair's compensation, working hours and conditions. (Id.) Plaintiff's claims in this matter include the allegation that those requirements are in violation of the NYLL and that the Homs and GreatAuPair otherwise violated the NYLL, FLSA and TVPRA. (See Am. Compl. ¶¶ 41, 108, 111).

Thus, the terms of the agreement between GreatAuPair and Plaintiff are so inextricably intertwined in this matter that Plaintiff's claims against the Homs could not exist but for GreatAuPair and Plaintiff's agreement. Plaintiff has acknowledged this not just in the allegations in her Complaint but in her recent discovery demands which ask for documentation solely in GreatAuPair's possession and information which is the direct result of GreatAuPair and Plaintiff's agreement.

## C.   In the alternative, Plaintiff's claims against the Homs should be dismissed pursuant to Fed. R. Civ. P. 12(c)

Plaintiff's claims should also be dismissed for the failure to state a claim under Rule 12(c).[1] Plaintiff has failed to state a claim under the FLSA and NYLL because the U.S. State Department regulations control the wages of au pairs under the J-1 Visa program. See 22 C.F.R. § 62.31(j). Plaintiff has also failed to sufficiently plead a claim against the Homs under the TVPRA because she has only alleged that: (i) Plaintiff told Defendant Marie Louise Hom that she would return to the Philippines as she no longer wanted to work for the Homs and wanted to be rematched; (ii) Defendant Marie Louise Hom responded by telling Plaintiff she should be prepared for that if she was not rematched with another family; and (iii) that Defendant Marie Louise Hom insisted to GreatAuPair not give Plaintiff an opportunity to rematch. (See Am. Compl. ¶¶ 79-83.) Such allegations fail to assert the necessary elements of a TVPRA claim. See Lawson v. Rubin, Case No. 17 CV 6404 (BMC), 2018 WL 2012869, *11 (April 29, 2018).

For these reasons, the Homs respectfully request that the Court grant its request for a pre-motion conference to discuss their anticipated motion to compel arbitration pursuant to the FAA and, in the alternative, to dismiss Plaintiff's claims.

---

[1] "When deciding Rule 12(c) motions for judgment on the pleadings, a court employs the standard that applies to motions to dismiss a complaint under Rule 12(b)(6)." Walker v. Sankhi, 494 F. App'x 140, 142 (2d Cir. 2012).

Marieta Besera v. GreatAuPair, LLC, Marc Hom, and Marie Louise Hom
Docket No. 20-cv-3862 (ARR)(SJB)
March 30, 2021                                                    Page **4** of **4**

Respectfully Submitted,

*s/ Heather D. Diddel*

Heather D. Diddel

cc by ECF:

      Felix Q. Vinluan
      Dominador Maphilindo Ocanada Carillo
      Attorneys for Plaintiff
      Law Office of Felix Vinlaun
      6910 Roosevelt Ave.
      Woodside, NY 11377
      718-478-4488
      dmocarillo@gmail.com
      fqvinluan@yahoo.com

      Manuel B. Quintal, Esq.
      Attorneys for Plaintiff
      291 Broadway, Suite 1501
      New York, NY 10007
      (212)732-0055
      quintallaw@aol.com

# EXHIBIT

# A

# GREATAUPAIR® Au Pair Agreement

## Instructions

As a participant in a United States Department of State Exchange Visitor Program, you must agree to and abide by the program regulations, the rules of your sponsor, GreatAuPair, and the state and federal laws of the United States. Please carefully review the terms of this Agreement, then sign and date this Agreement via our secure electronic signature service to be sure it is automatically attached to your GreatAuPair online account.

## Au Pair Agreement

The following agreement ("Agreement") is entered into between GreatAuPair, LLC, a Delaware limited liability company ("GreatAuPair") and (first and last name of au pair) __Marieta Besera__
("Au Pair", "I", "me" and "my") and outlines a minimum standard of participation and conduct for the Au Pair Program ("Program"). In exchange for program fees paid by Au Pair, GreatAuPair agrees to evaluate Au Pair for participation in the Program; represent Au Pair to prospective host families; provide training; travel arrangements and to provide reasonable support during the Program term. My electronic signature confirms that I have carefully reviewed the Agreement and that I understand and agree to the terms and conditions herein.

As an Au Pair, I understand and agree to participate in the Program and by entering this Agreement, I choose GreatAuPair as my sponsoring agency to provide the aforementioned services for the duration of my Program. I understand and agree that no employer-employee relationship exists between GreatAuPair, and me and that my chosen host family will be my employer during my Program term.

I understand and agree that Program regulations issued by the United States Department of State (22 CFR 62.31) ("Regulations") and GreatAuPair information, guidelines, brochures and handbooks are deemed incorporated in this Agreement. I acknowledge receipt of a copy of the Regulations as they apply to me. I understand that if there is any confusion between this Agreement and the terms of any other contracts, agreements, or GreatAuPair materials of any kind, the terms of this Agreement shall prevail.

**I understand and agree that I will not seek to change my visa status during the 12-month cultural exchange program nor will I marry (should I choose to do so) until after completing the Program.** I understand and agree that failure to comply with these terms and conditions may result in my removal from the Program. I understand and agree that removal from the Program necessitates my immediate departure from the U.S. back to my home country and failure to do so may result in legal action.

## Qualifications, Placement and Arrival

1. I understand that the Program is a minimum twelve (12) month long J-1 Visa cultural exchange childcare program in the USA.

2. I understand that I must speak conversational English.

3. I confirm that I comply with all the requirements for the Program including, but not limited to: that I have never been charged with or convicted of a criminal offense; I have successfully completed my secondary education and I am in good health. I confirm that the information I have given in my au pair application is accurate; all qualifications described, certificates and references provided are genuine. I confirm that I have no children (biological or adopted). I understand that in order to care for children under the age of two, I must have at least 200 hours of documented childcare experience with children under the age of two. I understand that GreatAuPair has the exclusive right to determine my suitability for acceptance and for my continued participation in the Program.

4. I understand that it is entirely my choice to participate and continue in the Program and to accept or decline a placement with a host family presented to me, and that it is my responsibility to read and understand all the information provided to me regarding a prospective host family. I agree to interview with the potential host family by Skype and/or telephone and request additional information, if needed, before accepting the placement.

**GREATAUPAIR** Au Pair Agreement

5. I understand that it is my responsibility to research the prospective community prior to accepting a placement. I agree to discuss the childcare responsibilities and schedule with the prospective host family prior to placement.

6. I will complete all visa and screening requirements and obtain a passport that is valid for a minimum of 26 months beyond my departure to the USA.

7. I agree to review all GreatAuPair pre-departure material before my departure to the USA.

8. I agree to complete GreatAuPair's 32-hour online Au Pair Academy training one week prior to my departure to the United States.  I agree and understand that failure to complete the Academy training may result in removal from the program. In the event that my departure is delayed due to incomplete training, I agree that all costs associated with travel changes will be my sole responsibility and that I will pay GreatAuPair for my travel arrangement changes prior to my departure to the USA.

9. I will be present in good time for all flights or other transportation provided or arranged by GreatAuPair.

10. I understand that Program flights will depart from and return to designated airports, that I am responsible for my own transportation to the specified departure airport in my home country and for transportation to a designated U.S. airport in time for my return flight. I understand that I am responsible for costs prior to departure and upon my return. I understand that GreatAuPair will not be responsible for alternate transportation, or airline baggage costs or airport taxes. I understand that if I change my ticket after it has been issued, I will be responsible for paying a change fee and other airline penalties. I understand that on the completion of my Program, I am expected to depart on the date and time arranged by GreatAuPair. I understand that GreatAuPair cannot book my return flight for a date later than thirty days after the completion of my Program.

11. I agree to keep the forms DS-2019 and I-94 safe at all times and I understand that it is costly to replace lost forms, and if lost, I must immediately replace such forms at my own cost. I understand that, should I wish to travel outside the US during my Program, I must submit (and receive) my sponsor-signed Form DS-2019 from GreatAuPair prior to leaving.

12. I understand that if I am in good standing with the Program, I may legally remain in the US for 30 days after my program end date. I understand that I have been advised not to travel outside of the U.S. during this 30-day grace period, as I may not be able to re-enter the US during this time.

**Program Requirements**

1. I understand that during my Program participation:

   a. I may provide child care and light childcare-related housework for up to 10 hours per day and not more than 45 hours per week.

   b. I will receive a weekly stipend from my host family (the employer) as determined by the Department of State, currently set at $195.75 per week (subject to change).  I understand the stipend cannot be withheld for any reason and will be paid to me every week on the same day via verifiable means such as check or direct deposit. Payment of the first weekly stipend shall be made upon the completion of my first week within my host family's home. I understand that I am responsible for obtaining a bank account within the first thirty (30) days on program to comply with GreatAuPair guidelines.

   c. I will have a minimum of one full weekend off per month (Friday evening to Monday morning), at least 1.5 days off each week and two weeks (10 days) paid vacation over the 12-month program.

   d. I will receive a $500 educational allowance to enroll in and to complete six credit hours of study at an accredited post-secondary institution and that I will be responsible for costs exceeding that amount. (The educational component for a 6-month extension is not less than three credit hours of academic credit or its

**GREATAUPAIR**® Au Pair Agreement

equivalent and the host family contributes up to $250.  The educational component for a 12-month and 9-month extension is not less than six credit hours and the host family contributes up to $500).

e.  I may not accept any form of paid employment in the U.S. during my stay other than within my duties as an exchange participant with my current host family.

f.  My host family must provide me with a suitable private bedroom. I understand and agree in the event that I find the bedroom to be lacking in privacy or I find the bedroom to be used for any other purpose by my host family that I will make GreatAuPair aware immediately.

g.  A parent or other responsible adult must remain in the home for the first three days following my arrival.

h.  I may not have the sole responsibility of a child younger than three (3) months. If my host family has a child younger than three months of age, a parent or other responsible adult must be present.

2.  I understand that active and safe care of the children is my first priority as an au pair. I agree to be diligent, conscientious and involved while caring for children and to never leave a child unattended and to never put a child at risk in any way. I agree to discuss with my host family my expectations regarding the allowable limit of personal Internet and phone communication while caring for children. **I understand that caring for children means that I take responsibility for the health, safety and welfare of the children within my care.**

3.  I understand that all vacation and free time must be planned and mutually agreed upon in advance with my host family. Should any issues arise regarding vacation and/or free time, I agree to inform GreatAuPair immediately.

4.  I agree to perform the child care responsibilities outlined by my host family to the best of my ability and with due respect, and make every effort to act as a caring, responsible family member. I will abide by my host family's household rules. I will discuss and agree to the rules for use of Internet, cell phone and phone use with my host family. If I do not understand any of the rules, I will ask my host family to write them down. I will accept any cultural differences in the spirit of cultural exchange.

5.  I understand that I will be responsible for all personal debts (personal phone calls, gas usage, etc.) during my Program. I understand and agree that I must pay for all outstanding bills prior to my departure from the host family home and/or the U.S.

6.  I agree to not use an automobile without express permission from the owner and that any agreement to use any automobile is strictly between the automobile's owner and me. I agree to not use an automobile unless I have the required driver's license for driving in the state, and the owner has obtained all mandatory automobile insurance coverage required for me. I understand that I am required to obtain a state driver's license where my host family lives even if the state does not specifically require it. I understand that in the event of an automobile accident, I may be liable for an insurance deductible up to USD $500 per accident based on my host family's insurance. I understand that I must carry my local US state driver's license and proof of insurance with me when driving. I understand that any omission of information as it relates to driving or any exaggeration of my driving ability may be grounds for removal from the program.

## Supervision, Monitoring and Support

1.  I will cooperate fully with those supervising the Program on my behalf, maintain monthly contact with my Local Childcare Coordinator or other GreatAuPair representative in my Local Childcare Coordinator's absence and abide by any reasonable instructions they may give me. In addition to the terms of this Agreement, I agree to abide by additional reasonable terms and conditions stipulated by GreatAuPair. I agree to attend GreatAuPair monthly activities organized by my Local Community Coordinator.

**GREATAUPAIR** Au Pair Agreement

2. I agree to immediately notify my Local Childcare Coordinator in case of dissatisfaction, concerns and/or problems including, but not limited to; my health, safety and welfare, adjustment to my host family and/or the American culture, misunderstandings, disagreements or problems with my host family, fulfilling my educational requirement, homesickness, language or other concerns. In situations where I am having problems with my host family, I agree to consult with and/or meet with my Local Childcare Coordinator or other GreatAuPair representative(s).

3. I will immediately report to GreatAuPair unusual or serious situations or incidents involving either my host family or myself.

4. I understand that a GreatAuPair representative will contact me within forty-eight hours of my arrival and meet with my host parent(s) and me within two weeks of my arrival. I agree to make myself available for these contacts and to immediately contact my Local Childcare Coordinator or Regional Manager if these contacts have not taken place.

5. I understand that I must keep a minimum of USD $500 for emergency purposes during the Program.

## Program Fees

1. I understand that I will be required to pay program fees to participate in the GreatAuPair program. The program fees cover the following:

   a. Processing of my GreatAuPair USA application
   b. Assistance from a GreatAuPair representative in my home country
   c. Circulation of my au pair application to potential GreatAuPair families
   d. Placement with a carefully screened American host family
   e. A DS-2019 form to obtain my J-1 au pair visa
   f. Certain travel costs
   g. Access to GreatAuPair's online training Academy
   h. Travel and accident insurance coverage during my program dates
   i. Support from GreatAuPair, including after-hours emergency support
   j. Return international airfare provided upon successful completion of program.

2. I understand that it is my responsibility to cover other costs associated with my participation in the program such as costs to apply for a J-1 visa, local transportation cost to my departure city and other expenses associated with my program participation.

3. I understand that GreatAuPair offers program Cancelation Insurance that will provide me with a full refund of program fees, excluding the application fee, paid in the event I cancel from the program after matching and prior to arrival.

4. I understand and accept that GreatAuPair's refund policy is as follows:

| Application Fee | Terms |
|---|---|
| Application Fee | The application fee is non-refundable for any reason, including not being accepted by GreatAuPair. |

# GREATAUPAIR® Au Pair Agreement

| Program Fee | No Cancelation Coverage |
|---|---|
| Cancelation after matching | Program fees are due upon matching and are non-refundable if you cancel. If the U.S. Embassy or Consulate denies your visa, you will be eligible to receive a refund of your program fees less a $200 administrative fee. Proof of denial may be required. |

| Program Fee | Cancelation with Cancelation Coverage |
|---|---|
| Cancelation after matching | If you purchase GreatAuPair Cancelation Insurance, you will receive a full refund of program fees (excluding the application fee) if you cancel prior to arrival in the USA. Full refund will apply to visa denials as well. |

| Elite Insurance Upgrade | Insurance Premium |
|---|---|
| Cancelation prior to arrival | Insurance premium upgrades are non-refundable once you enroll in the Elite-level insurance program and arrive to the United States. If you cancel prior to arrival, you will receive a refund of the insurance premium less a $50 administrative fee. If you purchased Cancelation Coverage, the $50 administrative fee will be waived. |

## Insurance

1. I understand that during the Program, I will be covered under GreatAuPair's Comfort basic travel and accident insurance and that I have reviewed my coverage plan as provided by GreatAuPair. I understand and agree that I will seek routine medical, dental and vision care, such as annual exams, prior to my departure to the U.S. I understand that I am insured for the period of time reflected on my DS-2019.

2. I understand and agree that the J-1 au pair program requires me to be of sound mind. I understand that the nature of childcare can be stressful and I agree to inform GreatAuPair immediately if I am experiencing stress, depression, and/or any other mental stressor while on program. I agree and understand that I will be immediately removed from program and sent home at my expense in the event it is found that I have omitted medical information relating to my mental state or if I have omitted information regarding prior treatment received for psychological illness.

3. I understand that, prior to my arrival in the U.S., I have the option to purchase an insurance upgrade to GreatAuPair's Elite policy, which includes third-party liability. This upgraded insurance will be valid for the duration of my 12-month program. Should I elect to extend my program for an additional 6, 9 or 12-months, I will be required to maintain my Elite policy during the extension period and that an additional Elite insurance fee will apply.

4. Insurance provided by GreatAuPair is valid from the start date to the end date of the Program. I understand that in order to have insurance coverage during my 30-day grace period month, I must purchase one additional month of insurance.

5. I agree to and understand the insurance policy and agree to pay for any medical or transportation expenses that are not covered by the insurance such as co-payments and emergency room deductibles. I understand that any conditions or illness I am suffering from prior to entering the U.S. will not be covered under any insurance. I release GreatAuPair

GREATAUPAIR® Au Pair Agreement

from any liability relating to my actions or choices to receive or not receive medical care. I understand that my insurance and participation in the Program does not cover costs related to court appearance assistance, liability insurance or legal fees.

6. I understand that the insurance plan does not provide benefits for any injury, illness, sickness, disease, or other physical, medical, mental or nervous condition, disorder or ailment that, with reasonable medical certainty, existed at the time of application or at any time during the six (6) months prior to the effective date of the insurance, including any subsequent, chronic or recurring complications or consequences related thereto or arising there from, whether or not previously manifested or symptomatic, diagnosed, treated, or disclosed prior to the effective date (a "pre-existing condition"), and that all charges and/or claims incurred for pre-existing conditions will be excluded from coverage under the insurance.

7. **Medical Release.** I hereby authorize any doctor, practitioner of the healing arts, hospital, clinic, healthcare related facility, pharmacy, government agency, insurance agency, insurance company, having information as to any of my care, advice, treatment, evaluation, diagnosis or prognosis for any physical or mental condition, or financial and employment status, to provide such information to the insurance company.

8. **Certification.** I hereby certify, represent and warrant that I (i) am eligible to participate in the insurance plan and (ii) am currently in good health and have not been diagnosed with, sought consultation or been treated for, and have not experienced any manifestation or symptoms of and do not suffer from any pre-existing or other medical condition which I foresee may require treatment during this insurance or for which I intend to claim under the Insurance Plan.

9. I understand that GreatAuPair has advised me to maintain insurance coverage in my home country in the event I must return home during my program and need medical treatment.

## Re-Matching During the Program

1. I understand that GreatAuPair does not guarantee that an au pair will have the opportunity to re-match during the Program and that such decision will be at GreatAuPair's sole discretion. I understand my childcare skills and professional conduct will be reviewed prior to re-match by GreatAuPair staff to determine eligibility. I agree to my former host family and/or my Local Childcare Coordinator serving as a reference to any prospective families while in re-match and I understand that GreatAuPair staff may be required to disclose information received from my original host family regarding my stay, performance and behavior while with their family.

2. If problems with my host family cannot be resolved and I am recommended for a future placement, I understand that, at GreatAuPair's discretion, GreatAuPair will use reasonable efforts to find a new host family for me.

3. During a re-match process, I shall, if possible, continue to live with my current host family who, in their discretion, may request me to provide, or not to provide, childcare. I understand that I will not be paid the weekly stipend if I am not asked to work.

4. In the event GreatAuPair deems it necessary to remove me from my host family's home, GreatAuPair will make a reasonable attempt to find temporary housing for me not to exceed 14 days. I understand and agree that I cannot seek removal or remove my belongings from the home without prior approval of GreatAuPair. I understand and agree that I cannot elect to stay with another family or friends during the transition period without prior written consent by GreatAuPair. In the event that reside at any location other than my defined host family's home during the transition period, I agree to inform GreatAuPair in writing of my whereabouts, which is to include the name, address and telephone number of the individual(s) with whom I am staying. **I agree to remain in contact with GreatAuPair at all times and to make myself available to be interviewed by new potential host families.**

5. I understand that in the event of a placement change, GreatAuPair will use the following method to calculate au pair vacation. Vacation time shall accrue on a basis of one day per month beginning upon the au pair's third month in the United States. Au pairs extending for 12 or 9 months will receive two weeks (10 days) paid vacation, and au pairs extending for 6 months shall receive one week (5 days) of paid vacation. Vacation time for au pairs who extend shall

**GREATAUPAIR®** Au Pair Agreement

accrue on the basis of one day per month during the extension program. I understand that if I have accrued vacation time while in my first placement that I will be paid out for said vacation by my host family and that I will not be allowed to rollover vacation time to my second placement.

6.  I understand that if my placement and/or participation in the program is/are deemed unsatisfactory by GreatAuPair for whatever reason, GreatAuPair will reassess my suitability for a future placement. If GreatAuPair determines that it cannot recommend placement with a new family or if a new placement cannot be found within a reasonable period or due to my behavior, or if I refuse to be placed, my participation in the Program will be terminated and I will be subject to the standard termination procedures outlined in this Agreement.

7.  **I understand and agree that I will only be allowed one rematch opportunity while on program.**

## Early Termination

1.  I understand and agree that GreatAuPair is my program sponsor, and as such, any decision regarding my program status will be made at the sole discretion of GreatAuPair.

2.  I understand and agree that in the event of illness, injury or other medical condition that prevents me from continuing my duties, I may not be eligible to continue in the program.

3.  I understand that I may be terminated from the Program if I do not successfully complete the Program with GreatAuPair for reasons including but not limited to: if I leave my host family without prior consent from GreatAuPair; if I decide to terminate my participation and return to my home country before the end of my Program; if I am removed from the Program at the discretion of GreatAuPair in accordance with this Agreement; if I engage in any illegal activity or am arrested; if I do not fully participate in training, academic courses and monthly meetings/contacts; if I in any way violate this Agreement; or if I put myself in a situation where I cannot be placed with a new host family. Such termination may result in any or all of the following:

    a.  I will forfeit all of the fees and expenses I have paid to participate in the Program;

    b.  I will forfeit my return plane ticket and I will be required to make my own arrangements to return to my home country at my own expense;

    c.  I will no longer receive the support of my host family or GreatAuPair;

    d.  My GreatAuPair accident and travel insurance coverage will no longer be valid;

    e.  GreatAuPair will not provide me with housing;

    f.  GreatAuPair's sponsorship of my J-1 visa will be revoked;

    g.  I will not be eligible to remain in the U.S. and will forfeit my 30-day grace period and must make arrangements to return home immediately.

    h.  If I remain in the U.S. after an agreed upon departure date, my status may be reported to U.S. authorities.

## Extension Program

1.  I understand that au pairs may apply to extend their Program participation for additional 6, 9 or 12 months beyond the first 12 Program months. I understand that I may apply to extend my Program participation with my current host family or to be considered for placement with a new host family during the extension period. In order to extend my Program I must submit an extension request before GreatAuPair's extension deadline and meet eligibility requirements for extending such as having successfully completed the educational component and being in good standing with my host family and GreatAuPair.

**GREATAUPAIR** Au Pair Agreement

## Other Terms and Conditions

1. I understand that I am responsible for complying with any federal, state labor and/or income tax laws that may apply. I understand that GreatAuPair does not provide legal or income tax advice regarding any such laws and is not responsible for informing me, or overseeing compliance with, any such income tax or labor laws which vary from state to state, and are subject to change from time to time.

2. I understand that GreatAuPair is not a party to any agreement or translations of agreements between me and any other organizations in my home or other country or between me and other organizations including, but not limited to, other US or international agencies, travel agencies and/or insurance companies. I understand that GreatAuPair assumes no duties or responsibilities for any acts or omissions of agreements between me and other parties.

## Privacy Consent

1. I understand that my application to the GreatAuPair USA Program requires me to disclose sensitive and private personal information. I understand that this application will be securely retained online by GreatAuPair and may be distributed to GreatAuPair's affiliated agents and/or interviewers, and to its network of Local Childcare Coordinators and Regional Directors and to prospective Host Families in an effort to obtain a placement for me in the GreatAuPair USA Program.

2. In the unlikely event of a legal claim, lawsuit or arrest in connection with my participation in the GreatAuPair USA Program, it may be necessary to provide my application to attorneys, insurers, or the United States Department of State and, if GreatAuPair receives a valid Court order or subpoena, to whatever entity is determined to have a legal right to obtain this information. The GreatAuPair Privacy Policy provides that my personal information will not be disclosed to any other parties unless I am given notice and an opportunity to object. GreatAuPair takes reasonable precautions to protect personal information from loss, misuse and unauthorized access, disclosure, alteration and destruction.

3. By completing and submitting the application, I am authorizing GreatAuPair to disseminate the information that is contained in my application and my online profile in the manner and for the purposes set forth above. I understand that I may revoke this consent at any time and I can request access to my personal information by sending a written request to GreatAuPair headquarters, however, such revocation of consent will cause me to be immediately terminated from the Program.

## General Release, Indemnification, Hold Harmless and Arbitration Provisions

1. **General Release, Indemnification and Hold Harmless Provision**. As a condition of my participation in the Program, I agree to release and hold harmless GreatAuPair, its employees, officers, subsidiaries, agents and/or affiliated organizations for injury, loss, delay, and/or any other damage and/or expense incurred by me or any other person due to (i) any incident beyond GreatAuPair's reasonable control, including without limitation, acts of God, acts of war, or government actions and restrictions, (ii) any events directly or indirectly caused, in whole or in part, by intentional or negligent acts or omissions by any third party, including but not limited to any member, guest, employee or agent of the host family or other persons in the host country, even if GreatAuPair's negligence is alleged to have contributed to the event; (iii) risks associated with foreign travel and living abroad, including but not limited to, risks associated with health care services, living conditions, sanitation conditions, road and transportation systems, criminal justice systems, civil liberty laws, customs and values; and/or (iv) any differences in the living conditions and standards between my home and home country and the host home and host country. As a further condition of my participation in the Program, I agree to indemnify and hold harmless GreatAuPair, its employees, officers, subsidiaries, agents and/or affiliated organizations from any liability or expense, including court costs and attorney fees, resulting from any injury, loss or any other damage or expense caused by me during my participation in the Program. I agree that GreatAuPair and/or its affiliates, without liability or expense to themselves, may take such actions, as it considers necessary regarding my health and safety during my participation in the Program.

GREATAUPAIR® Au Pair Agreement

2. **Arbitration, Choice of Law, Venue and Forum**. In the event of any dispute between the parties concerning the performance, enforcement or interpretation of this Agreement, such dispute will be determined by binding arbitration before the American Arbitration Association or Judicial Arbitration and Mediation Services in Austin, Texas, upon the petition of either party. In such proceeding, the parties may utilize subpoenas and have discovery as provided in the Texas Alternative Dispute Resolution Act (Civil Practice and Remedies Code, Title 7, Chapter 154). The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction on the petition of either party. I agree to arbitrate solely on an individual basis, and that this Agreement does not permit class arbitration or any claims brought as a plaintiff or class member in any class or representative arbitration proceeding. The arbitral tribunal may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. In the event the prohibition on class arbitration is deemed invalid or unenforceable, then the remaining portions of this clause will remain in force. The parties agree that this Agreement, the entire relationship of the parties hereto, and any dispute between the parties (whether grounded in contract, tort, statute, law or equity) shall be governed by, construed in accordance with, and interpreted pursuant to the laws of the State of Texas, USA, without giving effect to its choice of laws principles. I further agree that Texas is a fair and reasonable venue for resolution of any such dispute and submit to jurisdiction of the Courts of the State of Texas because among other reasons, this Agreement was negotiated in Texas and GreatAuPair is domiciled in Texas.  In the event this arbitration clause is deemed invalid or unenforceable, then exclusive venue for any and all disputes between the parties hereto shall be in Travis County, Texas, and shall be brought in the State District Courts of Travis County, Texas, or in the United States District Court for the Western District of Texas, Austin Division.  Further in the event this arbitration clause is deemed invalid or unenforceable, the parties hereto waive any challenge to personal jurisdiction or venue (including without limitation a challenge based on inconvenience) in Travis County, Texas, and specifically consent to the jurisdiction of the State District Courts of Travis County and the United States District Court for the Western District of Texas, Austin Division.

3. **Entire Agreement**.  This Agreement constitutes the entire agreement among the parties hereto with respect to the subject matter hereof, and supersedes any prior agreement or understanding among the parties hereto with respect to the subject matter hereof.

4. **Binding Effect**.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective legal representatives, heirs, successors and assigns.

**I have read and I understand the terms above. My electronic signature, below, indicates my acceptance of the terms of this Agreement, and is legally binding. No alteration of the terms of this Agreement will be valid unless approved by GreatAuPair in writing. I have retained a copy of this Agreement. The laws of the State of Texas, USA, shall govern this Agreement. Any and all disputes arising hereunder shall be resolved exclusively in the State of Texas as set forth in this Agreement, and the parties hereto consent to the exclusive personal jurisdiction of the arbitrators and courts of the State of Texas.**

**Signature:**   MARIETA HANG SALEM (Mar 8, 2017)

**Email:**   mhangsalem_03@yahoo.com

# Au Pair Agreement

Final Audit Report                                                    2020-09-03

| | |
|---|---|
| Created: | 2017-08-17 |
| By: | Echo API user Sign (echosign@greataupair.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAM64t1fUus4tmTPqKoub4iYQcu2pV8GqW |

## "Au Pair Agreement" History

Document created by Echo API user Sign (echosign@greataupair.com)
2017-08-17 - 11:23:49 AM GMT- IP address: 4.35.161.218

Document emailed to MARIETA BESERA (mhangsalem_03@yahoo.com) for signature
2017-08-17 - 11:23:54 AM GMT

Document e-signed by MARIETA BESERA (mhangsalem_03@yahoo.com)
E-signature obtained using URL retrieved through the Adobe Sign API
Signature Date: 2017-08-17 - 11:28:05 AM GMT - Time Source: server- IP address: 94.18.222.86

Signed document emailed to Echo API user Sign (echosign@greataupair.com) and MARIETA BESERA (mhangsalem_03@yahoo.com)
2017-08-17 - 11:28:05 AM GMT



POWERED BY
Adobe Sign

# EXHIBIT

# B

**GREATAUPAIR USA**

Host Family Agreement

**Instructions**

As a Host Family participating in the J-1 Exchange Visitor Program, you must agree to and abide by the U.S. Department of State program regulations and the terms and conditions of this Host Family Agreement. Please carefully review the terms of this Agreement, then sign and date this Agreement via our secure electronic signature service.

**Host Family Agreement**

We the undersigned ("we", "our", "host family" or "host" to include all members of said person's household and family hereinafter, in the aggregate, referred to as "we", "our", "host family" or "host") have applied to be a host family with GreatAuPair, LLC, a Delaware limited liability company ("GreatAuPair"). In exchange for program fees paid by host family, GreatAuPair agrees to recruit, screen and train au pair candidates for our consideration and to provide reasonable support during our program term. Our electronic signature confirms that we have carefully reviewed the Agreement and understand and agree to the following terms.

**Selection of Au Pair Candidates**

1. We understand that it is our responsibility to choose an au pair from the candidates presented to us and that GreatAuPair cannot guarantee our satisfaction with our selected au pair. We acknowledge that GreatAuPair has made reasonable efforts to verify the health and experience of the au pair and we agree that GreatAuPair cannot be held liable for any misrepresentation or omission on the part of a physician, agent or reference. We understand and agree that GreatAuPair shall not be liable for the performance or conduct of the au pair and that the au pair is not an employee or agent of GreatAuPair and therefore GreatAuPair maintains no direct control or dominion over our au pair. We understand that GreatAuPair is not liable for any misrepresentation, act or omission on the part of the au pair.

**Department of State Program Requirements**

2. As a participant in the au pair program we understand the importance of providing our au pair a positive cultural exchange experience and we agree to introduce our au pair to American life, making reasonable attempts to include our au pair in family activities.

3. We agree that we have adequate financial resources to satisfy all obligations as a GreatAuPair Host Family as required by the U.S. Department of State as a condition of hosting an au pair. If we are self-employed and/or cannot provide employer contact information, then we agree to provide proof of adequate financial resources via bank account statements and/or tax returns.

4. We understand that in order to participate in the program, both parents or legal guardians must be U.S. citizens or permanent legal residents of the United States, and that all children who live in our home, either full or part time must be listed in our application.

5. We agree to attend to the health, safety and welfare of our au pair and to promptly notify GreatAuPair of any changes to our au pair's well being.

6. We understand that our au pair can perform childcare services and light housekeeping related to childcare for up to 45 hours per week, 5.5 days per week with a maximum of 10 hours per day. We understand our obligation to provide our au pair with the following benefits as mandated by the Department of State:

   a) Room and board including a private bedroom that is approved by a GreatAuPair representative. The approved private bedroom must be a non-shared space with a functional door, located at the address listed on the au pair's DS-2019 form (the host family's primary residence) and may not be substituted for any other living quarters. Au pairs are not permitted to reside, even on a temporary basis, at an alternate location without prior written approval from GreatAuPair.

b) A weekly minimum stipend, based on the Fair Labor Standards Act (FLSA), as determined by the Department of State, currently set at $195.75 per week (subject to change). We understand the stipend cannot be withheld for any reason and will be paid to the au pair every week on the same day via verifiable means such as check or direct deposit. Payment of the first weekly stipend shall be made upon the completion of our au pair's first week within our home.

c) A minimum of one full weekend off per month (Friday evening to Monday morning), at least 1.5 days off each week and two weeks (10 days) paid vacation over the 12-month program. 12 and 9-Month extending au pairs will received two weeks (10 days) paid vacation, and 6-month extensions shall receive one week (5 days) of paid vacation.

d) Educational allowance up to $500 for our au pair to complete up to six credit hours of study at an accredited post-secondary institution. We agree to assist our au pair in finding transportation in order to attend classes and to provide scheduling opportunities. (The educational component for a 6-month extension is not less than three credit hours of academic credit or its equivalent and the host family contributes up to $250. The educational component for a 12-month and 9-month extension is not less than six credit hours and the host family contributes up to $500.)

7. In addition to providing our au pair the above benefits, we understand and agree to abide by all GreatAuPair and Department of State guidelines as published by the Department of State in 22 CFR Part 514 and which may be amended periodically. We acknowledge receipt of a copy of the Au Pair Program Regulations and the Host Family Handbook from GreatAuPair and we agree to the requirements therein which are not limited to, but shall include the following recitals:

a) We agree that a parent or other responsible adult will remain in the home for the first three days following the au pair's arrival.

b) We understand that in the event we have a child under the age of two years old, our au pair must have 200 hours of documented childcare experience working with children in this age group. We agree to notify GreatAuPair in advance should a baby join our household during our program in order to ensure our au pair has the required experience.

c) We understand that if we have a baby under three months of age, a parent or other responsible adult must be present in the home at all times and that the au pair cannot be the sole caregiver of the baby at any time.

d) We understand that if we have a special needs child, our chosen au pair must have identified his or her prior experience, skills or training in the care of special needs children and we will need to review and acknowledge in writing the au pair's prior experience, skills and training at the time of matching.

e) We agree to notify GreatAuPair in writing within one week of any material change in our family that may impact our ability to participate in the Au Pair Program, which includes but is not limited to a change in marital status, the addition or removal of any person from our household, a change of address, loss of job or any other change that may impact our au pair's well being and or living situation.

f) We agree to speak with our GreatAuPair local childcare coordinator within 48 hours of our au pair's arrival.

g) We agree to schedule an arrival orientation with our GreatAuPair local childcare coordinator within two weeks of our au pair's arrival in our home.

h) We agree to speak with our GreatAuPair local childcare coordinator on a monthly basis for the required contact call. We understand that failure to comply may result in the removal of the au pair and the forfeiture of any potential refund due.

i) We agree to facilitate our au pair's attendance at monthly GreatAuPair sponsored events and to attend at least one Host Family Event per calendar year.

j) We understand that we must live within one hour's driving time of the home of the GreatAuPair local childcare coordinator.  Should we relocate outside of a GreatAuPair serviced area during our program year, we understand we will not be eligible to continue in the program.  In this case, we are eligible to receive a refund in accordance with GreatAuPair's refund policy.

**Additional Program Requirements**

1. We understand and agree that once our au pair's flight has been booked, any changes made to our au pair's flight, per our request, will be at our sole expense. In addition, we understand that GreatAuPair is not responsible for any baggage fees associated with our au pair's arrival or return flight.

2. We agree to provide automobile insurance with a minimum of $50,000 in medical coverage to cover our au pair if she is permitted to drive our family car(s). We agree to demonstrate compliance by showing our Local Childcare Coordinator that our au pair has been added to our insurance policy during the Arrival Orientation. We agree that our au pair will not be held liable for more than a $500 insurance deductible per accident.  Accidents must be reported to our insurance agent and a claim must have been filed before the $500 deductible payment can be considered due and payable by our au pair. We agree not to hold GreatAuPair liable for any damages or loss due to the au pair's use or misuse of a vehicle.

3. We understand that we are responsible for evaluating our au pair's driving skills and we in our sole discretion, based on our determination will allow our au pair to drive our car(s) only after our au pair has obtained a legal driver's license for the state in which we primarily reside.

4. We understand that GreatAuPair provides our au pair with travel and accident insurance through a third-party and that the insurance is limited in its coverage. We agree to familiarize ourselves with the insurance policy and the limitations and exclusions therein. We also agree to hold GreatAuPair harmless for any disputes that may arise between the third-party insurance company, our au pair and ourselves.

5. We understand and agree that GreatAuPair shall not be responsible for any personal bills incurred by the au pair or us, such as telephone bills, automobile expenses, travel expenses or health expenses not covered by insurance.  We agree not to seek payment from GreatAuPair for any such expenses.

6. We understand that if we travel with our au pair outside of our local community and a problem arises, we are responsible for making arrangements at our expense to promptly return the au pair to our community. Further, we understand that if we occupy multiple residences, we are responsible for informing GreatAuPair when changing location for any period exceeding 5 days. We understand that travel with our au pair in excess of 30 days within the U.S. or outside of the U.S. must have prior written approval from GreatAuPair.

7. We understand and agree that GreatAuPair may immediately terminate our participation in the program and/or remove the au pair from our home if GreatAuPair determines, in its sole discretion, that the au pair's safety or well being may be at risk, or if our home is determined to be unsuitable for cultural exchange, or if we fail to comply with the terms of this Agreement or Department of State regulations.

**GREATAUPAIR USA**                    Host Family Agreement

8. Upon the completion or termination of our participation in the au pair program, we agree to provide reasonable assistance to GreatAuPair to ensure that our au pair leaves the United States.

**Placement Change, Replacement Au Pair, Credit and Refund Policy**

1. If we have concerns with our au pair's behavior or performance, we agree to keep our au pair for a minimum of thirty (30) days and we agree to work with a GreatAuPair representative to help resolve placement issues.  If after thirty (30) days from our au pair's arrival, GreatAuPair deems a placement change necessary, we agree to continue housing our au pair for a period of up to 14 days during the transition period.

2. In the event GreatAuPair deems it necessary to remove our au pair from our home, we agree to pay GreatAuPair an au pair housing fee of $50 per day for each day our au pair does not reside in our home, not to exceed 14 days. We understand that removal of our au pair may only be exercised by GreatAuPair and that we cannot seek removal of our au pair or remove our au pair's belongings from our home without prior approval of GreatAuPair.

3. We understand that in the event of a placement change, we are responsible for paying pro rata, vacation time due our outgoing au pair prior to the au pair's departure from our home. Vacation time shall accrue on a basis of one day per month beginning upon the au pair's third month in the United States. Au pairs extending for 12 or 9 months will receive two weeks (10 days) paid vacation, and au pairs extending for 6 months shall receive one week (5 days) of paid vacation. Vacation time for au pairs who extend shall accrue on the basis of one day per month during the extension program.

4. We understand and agree that in the event of illness, injury or other medical condition that prevents our au pair from continuing her duties, our au pair will not be eligible to continue in the program and will be required to return home.

5. We understand and agree that GreatAuPair is the au pair's program sponsor, and as such, any decision regarding our au pair's program status will be made at the sole discretion of GreatAuPair.

6. We understand and agree that the refund policies set forth herein will be the exclusive remedy in the event GreatAuPair is unable or unwilling to provide a replacement au pair, and that GreatAuPair is not responsible for any economic hardship, damage or loss alleged to arise from the unavailability of the au pair's services.

7. We understand and agree that a placement change initiated by our au pair, for any reason, does not make us eligible for an increased credit or refund. Furthermore, we agree and understand that in the event that our au pair leaves the placement without warning, elects to change her/his visa status, or takes any other action that causes the placement to end abruptly, that we will continue to be held to the terms and conditions defined in this Agreement.

8. Should a placement change occur, we understand that we are subject to GreatAuPair's replacement policy as follows:

GREATAuPairUSA

## Host Family Agreement

**Replacement Policy**

| Replacement Au Pairs | Terms & Conditions Applicable Only to 12-Month Placements |
|---|---|
| Within first 6 months of family's 12-month program | Host family is eligible to receive one replacement au pair. Host family will pay for any additional months of service they may receive from the new au pair at a rate of $691/month due 30 days after the replacement au pair's arrival. If host family matches with an in-country au pair, they are responsible for transportation costs for the au pair to travel to their home. If host family matches with an out-of-country au pair and host family has received a program fee discount of $500 or greater, then Family agrees to pay an airfare surcharge of $500 to offset the cost of au pair's airfare. |
| Within the last six months of family's 12-month program | Host family is not eligible to receive a replacement au pair. Host family will receive a banked credit in the amount of $591 per month of unused service less any balance due on the account. |
| 12- Month In-country placements | Host family is eligible to receive one replacement au pair within the first 6 months on program. Host family will pay for any additional months of service they may receive from the new au pair at a rate of $691/month due 30 days after the replacement au pair's arrival. If host family matches with an in-country au pair, they are responsible for transportation costs for the au pair to travel to their home. If host family matches with an out-of-country au pair and host family has received a program fee discount of $500 or greater, then Family agrees to pay an airfare surcharge of $500 to offset the cost of au pair's airfare. |
| Extension placements | **Host family is not eligible to receive a replacement au pair.** |

1. We understand and agree that we may be responsible for providing our replacement au pair with up to $500 in tuition reimbursement and up to two weeks of paid vacation.

2. We understand and accept that GreatAuPair's refund and credit policy is as follows:

GREAT**AU**PAIR**USA**

## Host Family Agreement

**Refund Policy**

| 12-Month Program | Amount | Terms |
|---|---|---|
| Refund prior to au pair's arrival | - | All fees paid less a $500 administrative fee and non-refundable airfare. |
| Refund within the first 6 months of service | ($491)/Month | Monthly refund rate for unused service, less any balance due on the account. |
| Refund after 6 months of service | $0 | No refund available. Eligible for a program credit at a rate of $591/month for unused service, less any balance due on the account. |
| International Air Surcharge | $0 | Non-refundable |

| 12-Month In-Country Refund * | Amount | Terms |
|---|---|---|
| Refund within the first 6 months of service | ($541)/Month | Monthly refund rate for unused service, less any balance due on the account. |
| Refund after 6 months of service | $0 | No refund available. Eligible for program credit at a rate of $641/month for unused service, less any balance due on the account. |

**\* No refunds for in-country placements less than 12-months in duration. Host family will receive a program credit as defined in the terms of the refund policy.**

| Extension Program Refund | Amount | Terms |
|---|---|---|
| Department of State SEVIS Extension Fee | $367 | Non-refundable. |
| Refund within the first 6 months of extension | ($350)/Month | Monthly refund rate for unused service, less any balance due on the account. |
| Refund after 6 months of extension | $0 | No refund available. Eligible for a program credit at a rate of $400/month for unused service, less any balance due on the account. |

Host Family Agreement

1. We understand and agree that the amount of any credit or refund is based on the full payment of GreatAuPair's standard program fee as published on the GreatAuPairUSA.com website at the time of purchase and the amount of any such credit or refund will be reduced by subtracting the amount of any discounts we may have received at the time of purchase.

2. We understand and agree that a $500 administrative fee will be retained by GreatAuPair if we decide to leave the program or if we are removed from the program prior to the au pair's arrival and/or in the event we choose a different candidate for any reason, inclusive of visa denial. We understand that we may also be responsible for the cost of airfare in the event that travel has been booked.

3. We understand and agree that the majority of GreatAuPair's operating costs are incurred in the process of recruiting, screening, training and arranging the au pair's travel and that GreatAuPair's refund policy is limited. A refund, if owed, will be issued within 14 days of receiving the refund request and will be refunded to the original source of payment.

4. We understand and agree that the program credit is calculated by month, and that credit for partial months is calculated by rounding up to the nearest week if an au pair was in our home for four (4) or more days of a given week, and rounding down to the nearest week if the au pair was in our home for three (3) or less days of a given week.

5. We understand and agree that program credits expire twelve (12) months from the end date of the last placement, and that they have no cash value and are non-transferrable. We understand and agree that a refund must be requested within ninety (90) days of placement break or we forfeit our right to refund and instead will receive a program credit as outlined within this Agreement.

6. We understand that we cannot seek reimbursement from GreatAuPair for any expenses related to our au pair, including but not limited to the weekly stipend, tuition, mobile devices, or personal loans of any kind.

7. We understand and agree that in the event we elect to make installment payments for our program fee, we will pay GreatAuPair a $25 late fee for every instance that our monthly installment payment is not received when due.

8. We understand and agree that our program fees do not cover return airfare for our au pair. In the event our au pair does not elect to use a return air ticket provided by GreatAuPair, no refund, credit, or travel voucher will be provided. If we allow our au pair to end her/his program early, no refund or credit will be provided for unused service.

**Other Terms and Conditions**

1. We understand that the decision to grant a participant a J-1 visa is at the sole discretion of the consular officer in the au pair's home country and that GreatAuPair cannot be held liable in the event of a visa denial. Furthermore, we understand that there is always a risk that a participant may not be granted a visa to participate in the J-1 au pair program.

2. We understand that if we wish to participate in the extension program with our au pair that GreatAuPair must be in receipt of all paperwork, including proof of course completion, prior to the Department of State submission deadline date and that the Department of State extension fee must be paid in full prior to submission. We also recognize that a request does not guarantee acceptance on the part of the Department of State. In addition, we understand that the extension fee cannot be refunded for any reason. We agree to consult with GreatAuPair prior to travel outside of the United States involving our au pair during his/her extension year.

3. We understand and agree that GreatAuPair does not guarantee continuous childcare coverage at any time, including but not limited to situations involving arrival delays, au pair cancellations, visa denials, illness, and/or inability or unwillingness by an au pair to fulfill her duties. We hereby irrevocably, unconditionally, and fully remise, release and

forever discharge GreatAuPair, its subsidiaries, officers, employees and/or agents from any and all claims for financial, incidental or consequential damages, including but not limited to costs of alternative or interim childcare, loss of income, travel costs, emotional or psychological injury, or other loss or damage of any kind which may arise from the unavailability of an au pair's services for any reason whatsoever.

4. **General Release, Indemnification and Hold Harmless Provision**. We shall irrevocably, unconditionally, and fully remise, release, forever discharge, indemnify, defend and hold harmless GreatAuPair, its subsidiaries, officers, employees, and/or agents from any and all claims related to personal and/or property damage, injury, loss, delay or expense incurred by our family, guests, au pairs, employees or agents, due to: (i) events beyond GreatAuPair's reasonable control, including without limitation, acts of God, acts of war or governmental restrictions, and, in the absence of gross negligence or willful misconduct by GreatAuPair (ii) any events directly or indirectly caused by any intentional or negligent acts or omissions by us, our guests, employees or agents, or an au pair placed in our household. Without limiting the generality of the foregoing, we further acknowledge that any au pair provided through GreatAuPair is not an employee or agent of GreatAuPair and actions or omissions of such au pairs are not to be attributed in any way to GreatAuPair. We further agree to indemnify and hold harmless GreatAuPair, its subsidiaries, officers, employees and/or agents from any and all liability or expense, including court costs and legal fees incurred, that we in any way caused or contributed to, whether directly or indirectly.

5. We understand that we are solely responsible for complying with any applicable federal, state, or local labor, wage or tax laws or regulations ("Labor Laws"), and shall indemnify, defend, and hold harmless GreatAuPair, its subsidiaries, officers, employees, and/or agents from any and all claims related to our host family or au pair pursuant to Labor Laws. We further understand that GreatAuPair does not provide legal or income tax advice regarding any such laws and is not responsible for informing our family of, or overseeing compliance with, any such labor laws and income tax laws which vary from state to state and are subject to change from time to time.

6. We understand that due to the fact that an employee-employer relationship exists between our family and our au pair(s), we are responsible for determining our compliance with the FLSA in accordance with our state's labor and tax laws, and whether Workers' Compensation insurance, or any other insurance requirements, is mandatory under federal, state and/or local laws.

7. We agree to inform GreatAuPair of any use of a recording device in the home, including but not limited to a nanny cam, and said device shall be limited to common areas of the home. We agree to abide by the Department of State regulation, which stipulates that an au pair must have a private bedroom and that no such recording device will be present in the au pair's bedroom or bathroom at any time. Under penalty of perjury.

8. **Arbitration, Choice of Law, Venue and Forum**. In the event of any dispute between the parties concerning the performance, enforcement or interpretation of this Agreement, such dispute shall be determined by binding arbitration before the American Arbitration Association or Judicial Arbitration and Mediation Services in Austin, Texas, upon the petition of either party. In such proceeding, the parties may utilize subpoenas and have discovery as provided in the Texas Alternative Dispute Resolution Act (Civil Practice and Remedies Code, Title 7, Chapter 154). The decision of the arbitrator shall be final and binding and may be enforced in any court of competent jurisdiction on the petition of either party. The Host agrees to arbitrate solely on an individual basis, and that this Agreement does not permit class arbitration or any claims brought as a plaintiff or class member in any class or representative arbitration proceeding. The arbitral tribunal may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. In the event the prohibition on class arbitration is deemed invalid or unenforceable, then the remaining portions of this Agreement will remain in force. The parties agree that this Agreement, the entire relationship of the parties hereto, and any dispute between the parties (whether grounded in contract, tort, statute, law or equity) shall be governed by, construed in accordance with, and interpreted pursuant to the laws of the State of Texas, without giving effect to its choice of laws principles. Host further agrees that Texas is a fair and reasonable venue for resolution of any such dispute and it submits to jurisdiction of the Courts of the State of Texas because among other reasons, this Agreement was negotiated in Texas and GreatAuPair is domiciled in Texas.  In

**Host Family Agreement**

the event this arbitration clause is deemed invalid or unenforceable, then exclusive venue for any and all disputes between the parties hereto shall be in Travis County, Texas, and shall be brought in the State District Courts of Travis County, Texas, or in the United States District Court for the Western District of Texas, Austin Division.  Further in the event this arbitration clause is deemed invalid or unenforceable, the parties hereto waive any challenge to personal jurisdiction or venue (including without limitation a challenge based on inconvenience) in Travis County, Texas, and specifically consent to the jurisdiction of the State District Courts of Travis County and the United States District Court for the Western District of Texas, Austin Division.

9. **Entire Agreement**.  This Agreement constitutes the entire agreement among the parties hereto with respect to the subject matter hereof, and supersedes any prior agreement or understanding among the parties hereto with respect to the subject matter hereof.

10. **Binding Effect**.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective legal representatives, heirs, successors and assigns.

**Privacy Consent**

1. In the unlikely event of a legal claim, lawsuit or arrest in connection with our participation in the GreatAuPair program, we understand it may be necessary to provide our host family application and related information to attorneys, insurers, or the United States Department of State or, if GreatAuPair receives a valid Court order or subpoena, to whatever entity is determined to have a legal right to obtain this information. The GreatAuPair Privacy Policy provides that a host family's personal information will not be disclosed to any other parties unless it is given notice and an opportunity to object. GreatAuPair takes reasonable precautions to protect personal information from loss, misuse and unauthorized access, disclosure, alteration and destruction.

2. We agree that GreatAuPair has the exclusive right to determine suitability of our family to participate in the program. We agree that in determining suitability, GreatAuPair may make inquiries to third parties about family members and other individuals residing at or frequently staying at our residence. Under penalty of perjury, we confirm that all information submitted in our Host Family Application is true, complete and correct as of the date submitted. In the event GreatAuPair removes us from the program, we understand and agree that we forfeit any right to a credit or refund.

**I have read, understand and agree to the terms and conditions contained herein. My physical or electronic signature below, confirms my acceptance of the terms and conditions of this Agreement, and is legally binding. No alteration of the terms or conditions of this Agreement shall be valid unless approved in writing by GreatAuPair. I have retained a copy of this Agreement.**

_____
Responsible Host Family Member

_____
Email Address

Marie Louise hom (Aug 18, 2017)
_____
Authorized Signature

_____
Date



# 2017 GreatAuPair Host Family Agreement - Hom

Adobe Sign Document History                    08/18/2017

| | |
|---|---|
| Created: | 08/17/2017 |
| By: | Winnie Reynolds (winnie@greataupair.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAhu5Qdp1mBVro4q2Gqn0qvpG5Lh_kpZGD |

## "2017 GreatAuPair Host Family Agreement - Hom" History

Document created by Winnie Reynolds (winnie@greataupair.com)
08/17/2017 - 9:06:29 AM PDT- IP address: 73.223.47.46

Document emailed to Marie Louise hom (marielouisehom@gmail.com) for signature
08/17/2017 - 9:06:32 AM PDT

Document viewed by Marie Louise hom (marielouisehom@gmail.com)
08/17/2017 - 9:10:31 AM PDT- IP address: 172.56.31.36

Document e-signed by Marie Louise hom (marielouisehom@gmail.com)
Signature Date: 08/18/2017 - 1:49:00 AM PDT - Time Source: server- IP address: 172.56.6.197

Signed document emailed to Winnie Reynolds (winnie@greataupair.com) and Marie Louise hom (marielouisehom@gmail.com)
08/18/2017 - 1:49:00 AM PDT

Adobe Sign

# EXHIBIT

# C



# Host Family–Au Pair Agreement

## Instructions

The US Department of State requires that the au pair and host family sign a written agreement that outlines the au pair's obligation to provide child care services. Please sign and date this agreement via our electronic signature service to be sure this agreement is submitted with your application.

---

**Host Family–Au Pair Agreement**

As an au pair/host family in a designated US Department of State Au Pair Program, I/we understand and agree to adhere to the following:

- We have interviewed each other on at least two separate occasions via phone and/or Skype video and we confirm that we have independently chosen to match as au pair and host family.

- An au pair is not to provide more than 45 hours of childcare services per week, including hours when the au pair is caring for sleeping children.

- An au pair is not to provide more than 10 hours of childcare on any given day, including hours when the au pair is caring for sleeping children.

- An au pair is to receive a minimum of one and a half days off per week in addition to one weekend (Friday evening to Monday morning) off each month.

- An au pair is to receive two weeks of paid vacation during his/her stay in the United States (to be mutually agreed upon between the host family and au pair).

- Regardless of the number of hours of childcare provided, the au pair is to receive the weekly stipend as agreed between GreatAuPair, the host family and the au pair for the category of au pair selected, which shall never be less than $195.75 as stipulated by regulations governing the au pair program.

- An au pair must register and attend classes at an accredited US post-secondary institution for not less than six semester hours of academic credit or its equivalent. I/We understand that non-participation in this education component is a violation of program guidelines.

- The host family agrees to facilitate enrollment and transportation for the au pair at a U.S. post secondary institution and will be responsible for covering the cost of tuition up to a maximum of $500 per year.

I/We have read and understand the information outlined above and agree to adhere to this and other program regulations established by the US Department of State.

| Marie-Louise or Marc Hom | Marie- Louise HOM (Aug 23, 2017) | Aug 23, 2017 |
|---|---|---|
| Typed name of US host parent/guardian on behalf of host family/host parents | Signature of US host parent/guardian on behalf of host family/host parents | Date |

| Marieta Besera | MARIETA BESERA (Aug 23, 2017) | Aug 23, 2017 |
|---|---|---|
| Typed name of Au Pair | Signature of Au Pair | Date |



# 2017 Childcare Agreement - Hom / Besera

Adobe Sign Document History                     08/23/2017

| | |
|---|---|
| Created: | 08/22/2017 |
| By: | Winnie Reynolds (winnie@greataupair.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAdJ0xtD7QH8SHxGZN4Ouhkdi810byVWc0 |

# "2017 Childcare Agreement - Hom / Besera" History

Document created by Winnie Reynolds (winnie@greataupair.com)
08/22/2017 - 5:54:29 PM PDT- IP address: 73.223.47.46

Document emailed to Marie- Louise HOM (marielouisehom@gmail.com) for signature
08/22/2017 - 5:55:36 PM PDT

Document emailed to MARIETA BESERA (mhangsalem_03@yahoo.com) for signature
08/22/2017 - 5:55:36 PM PDT

Document viewed by Marie- Louise HOM (marielouisehom@gmail.com)
08/22/2017 - 10:06:13 PM PDT- IP address: 109.57.220.171

Document viewed by MARIETA BESERA (mhangsalem_03@yahoo.com)
08/23/2017 - 1:26:51 AM PDT- IP address: 83.137.1.199

Document e-signed by MARIETA BESERA (mhangsalem_03@yahoo.com)
Signature Date: 08/23/2017 - 1:28:58 AM PDT - Time Source: server- IP address: 83.137.1.199

Document e-signed by Marie- Louise HOM (marielouisehom@gmail.com)
Signature Date: 08/23/2017 - 1:36:43 PM PDT - Time Source: server- IP address: 109.56.174.73

Signed document emailed to Winnie Reynolds (winnie@greataupair.com), MARIETA BESERA (mhangsalem_03@yahoo.com) and Marie- Louise HOM (marielouisehom@gmail.com)
08/23/2017 - 1:36:43 PM PDT

Adobe Sign