UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                              :

MARIETA BESERA,                                           :          20-CV-3862 (ARR) (SJB)

                                                              :

                  *Plaintiff*,                             :          <u>NOT FOR ELECTRONIC</u>
                                                              :          <u>OR PRINT PUBLICATION</u>

   -against-                                            :

                                                               :

MARC HØM and MARIE LOUISE HØM,         :          **OPINION & ORDER**

                                                               :

                  *Defendants*.                          :
                                                               X
-----------------------------------------------------------------------

ROSS, United States District Judge:

In this employment dispute, defendants, Marc Høm and Marie Louise Høm, move to compel arbitration or in the alternative dismiss the complaint. Defs.' Mot. Compel Arb. 7–22 ("Defs.' Mot."), ECF No. 49-1. Plaintiff, Marieta Besera, opposes, arguing that she never consented to arbitrate her claims against these defendants and regardless they have waived any right to compel arbitration at this point in the litigation. Pl.'s Opp'n 1–14, ECF No. 50. For the following reasons, I grant defendants' motion to compel arbitration and stay this action pending the outcome of those proceedings.

## BACKGROUND

Plaintiff, Marieta Besera, is a Filipino national who came to the United States through the U.S Department of State's *au pair* program to provide childcare for defendants Marc Høm and Marie Louse Høm. Am. Compl. ¶ 22–23, 43–47, 165, ECF No. 12. This program allows foreign nationals to live with an American host family while providing childcare services and attending a post-secondary educational institution. *See generally* 22 C.F.R. § 62.31. Former defendant, Great Au Pair, LLC ("GAP"), is a sponsor organization "accredited by the U.S. Department of State to

sponsor, recruit, and place foreign *au pairs* with American families under the J-1 visa program." Am. Compl. ¶ 16.

On August 17, 2017, plaintiff signed a contract with GAP to facilitate her *au pair* placement with the Høms in Brooklyn, New York (hereinafter the "Au Pair Agreement"). Au Pair Agreement, Høms' Pre-Mot. Letter Ex. A, ECF No. 40.[1] This agreement, which governed the employment relationship between plaintiff and GAP, contained an arbitration clause referring "any dispute between [plaintiff and GAP] concerning the performance, enforcement or interpretation of this Agreement." *Id*. at 9.

On August 23, 2017, plaintiff and the Høms entered into a separate agreement outlining the parties' requirements for participating in the *au pair* program (hereinafter the "Host Family-Au Pair Agreement"). Host Family-Au Pair Agreement, Diddel Decl. Ex. C, ECF No. 49-2. These requirements include ensuring that the *au pair* does not "provide more than 10 hours of childcare on any given day," that the *au pair* does not "provide more than 45 hours of childcare services per week," and that the *au pair* "is to receive a minimum of one and a half days off per week in addition to one weekend (Friday evening to Monday morning) off each month." Host Family-Au Pair Agreement 1. This agreement does not contain an arbitration clause. *Id.*

Subsequently, plaintiff worked as an *au pair* for the Høms from October 2017 to November 2019. Am. Compl. ¶ 105. Then, on August 21, 2020, plaintiff filed the instant lawsuit against GAP and the Høms alleging violations of the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and the Trafficking Victims Protection Reauthorization Act ("TVPRA"). *Id*. ¶¶ 133–201. Specifically, plaintiff claims that all defendants willfully failed to pay her minimum

---

[1] The copy of the Au Pair Agreement attached to defendants' motion to compel arbitration is missing the first two pages. *See* Diddel Decl. Ex. A, ECF No. 49-2.

wage and to compensate her for all the hours she worked. *Id.* ¶¶ 147, 150, 156, 158, 168–69, 173, 177.

On October 28, 2020, GAP sought permission to file a motion to compel arbitration of the claims against it, pursuant to the arbitration clause in the Au Pair Agreement. GAP Pre-Mot. Letter, ECF No. 25. Plaintiff later conceded that this arbitration clause encompassed her FLSA, NYLL, and TVPRA claims against GAP and stipulated to GAP's dismissal from this lawsuit on November 30, 2020. Stipulation of Dismissal, ECF No. 34; Minute Entry (Dec. 18, 2020), ECF No. 37.

Meanwhile, the Høms answered the amended complaint on November 13, 2020 and asserted, as an affirmative defense, that plaintiff's claims against them were "subject to a valid and enforceable arbitration agreement." Høms' Answer ¶ 218, ECF No. 32. After agreeing to a case management plan and exchanging initial discovery, Opp'n 14, the Høms sought permission to move to compel arbitration or in the alternative dismiss the action on March 30, 2021. Høms' Pre-Mot. Letter, ECF No. 40. The court having granted permission, the Høms served their motion on April 28, 2021. Defs.' Mot., ECF No. 49-1. Plaintiff served her opposition on May 12, 2021, Pl.'s Opp'n, ECF No. 50, and the Høms served their reply on May 19, 2021. Reply, ECF No. 51.

**LEGAL STANDARD**

In deciding a motion to compel arbitration, courts apply a "standard similar to the one applicable for a motion for summary judgment." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 281 n.1 (2d Cir. 2019) (citation omitted). This means I must "consider all relevant, admissible evidence submitted by the parties" and "draw all reasonable inferences in favor of the non-moving party." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)).

**DISCUSSION**

"In deciding whether claims are subject to arbitration, a court must consider (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). Plaintiff has conceded the second prong—that her FLSA, NYLL, and TVPRA claims fall within the scope of the arbitration clause in the Au Pair Agreement. *See* Minute Entry (Dec. 18, 2020). Therefore, my analysis focuses on the first prong—whether a valid agreement to arbitrate exists between plaintiff and the Høms.

"[A]rbitration is a matter of contract, and therefore a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004) (citation and quotation marks omitted). However, the Second Circuit has "recognized a number of common law principles of contract law that may allow non-signatories to enforce an arbitration agreement, including equitable estoppel." *Ross v. Am. Express Co.*, 478 F.3d 96, 99 (2d Cir. 2007). While the Host Family-Au Pair Agreement between plaintiff and the Høms lacks an arbitration clause, I conclude that plaintiff is estopped from refusing to arbitrate her claims with the Høms given the arbitration clause in the Au Pair Agreement. Further, I determine that the Høms have not waived their right to compel such arbitration.

**I.     Plaintiff Is Estopped from Refusing to Arbitrate.**

"Under principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute" when two conditions are met: (1) "the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed," and (2) there exists "a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped

4

from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126–27 (2d Cir. 2010) (citations and quotation marks omitted).

Turning to the first consideration, the Second Circuit has not "specif[ied] the minimum quantum of 'intertwined-ness' required to support a finding of estoppel." *JLM Indus.*, 387 F.3d at 178. But "'[i]ntertwined-ness' depends on how related the factual issues of the claims are to the subject matter of the arbitration agreements." *Doe v. Trump Corp.*, 453 F. Supp. 3d 634, 640 (S.D.N.Y. 2020); *see also Catz v. Precision Glob. Consulting*, No. 19-CV-7499 (ER), 2021 WL 1600097, at *10 (S.D.N.Y. Apr. 23, 2021) (noting that "[t]he intertwined-ness test's first prong asks the Court to consider whether [the plaintiff]'s claims" against the non-signatory "arise from the subject matter of the" contract that includes the arbitration clause). Courts in this circuit often find this prong met where a plaintiff raises nearly identical employment challenges against joint employers. *See, e.g.*, *Catz*, 2021 WL 1600097, at *10 ("The subject matter of [the plaintiff]'s claims involve[s] the [non-signatory] defendants' alleged transgressions related to her employment with [the signatory defendant]. The two are inextricably linked."); *Thompson v. Body Sculpt Int'l, LLC*, No. 18-CV-1001 (ARR) (GRB), 2018 WL 3235545, at *8 (E.D.N.Y. July 2, 2018); *Barreto v. Jec II, LLC*, No. 16-CV-9729 (KBF), 2017 WL 3172827, at *6 (S.D.N.Y. July 25, 2017); *Valdez-Mendoza v. Jovani Fashion Ltd.*, No. 15-CV-7261 (ILG), 2017 WL 519230, at *3 n.2 (E.D.N.Y. Feb. 8, 2017); *Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, No. 12-CV-5651 (AJN), 2014 WL 1172581, at *5 (S.D.N.Y. Mar. 21, 2014).

Here, the Au Pair Agreement between plaintiff and GAP outlines the maximum number of hours plaintiff may work and sets the amount of her weekly stipend. Au Pair Agreement 2. Then in the Host Family-Au Pair Agreement, the Høms affirmed that they would adhere to these same

5

conditions, demonstrating that the subject matter of the two agreements was substantially related. Host Family-Au Pair Agreement 1. In turn, plaintiff raises nearly identical FLSA, NYLL, and TVPRA claims that both GAP and the Høms violated these constraints.[2] Am. Compl. ¶¶ 133–201. Additionally, plaintiff alleges that she was "an 'employee' of each of Defendants"—GAP and the Høms—". . . within the meaning of the FLSA and the NYLL," illustrating that plaintiff considered GAP and the Høms her joint employers. *Id.* ¶ 26. Taken together, these facts sufficiently show that plaintiff's claims against GAP and the Høms are factually and legally intertwined.

Turning to the second consideration, a relationship is sufficiently close where the non-signatory "would predictably become, with [plaintiff's] knowledge and consent, affiliated or associated with [the non-party signatory] in such a manner as to make it unfair to allow [plaintiff] to avoid [her] commitment to arbitrate." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008). In other words, the two are so "aligned such that a contractual obligation to one should be construed as a contractual obligation with the other." *Trump Corp.*, 453 F. Supp. 3d at 642. Courts in this circuit have found this factor met in employment disputes when a signatory and non-signatory "are part of the same employment relationship." *Fenton v. Criterion Worldwide*, No. 18-CV-10224 (ER), 2020 WL 1489795, at *5 (S.D.N.Y. Mar. 27, 2020); *see also, e.g.*, *Salzano v. Lace Ent. Inc.*, No. 13-CV-5600 (LGS), 2014 WL 3583195, at *5 (S.D.N.Y. July 18, 2014) (finding a "sufficiently close relationship" in part because the "[p]laintiff considered [the non-signatory] to be his employer").[3] Indeed, the Second Circuit has held that a plaintiff was estopped from avoiding arbitration with a non-signatory because she considered that entity her co-employer

---

[2] The only meaningful difference is that plaintiff also brought class claims against GAP, but those have since been dismissed. Am. Compl. ¶¶ 124–53; Stipulation of Dismissal.

[3] Plaintiff argues that being joint employers does not sufficiently show a close relationship, Opp'n 11, but does not cite any authority on this point.

and knew at the time she signed the contract containing an arbitration clause that she would work directly with the non-signatory. *Ragone*, 595 F.3d at 126–27.

Here, plaintiff signed the Au Pair Agreement with GAP knowing that she would work directly for the Høms. Am. Compl. ¶¶ 35–41. She also considered GAP and the Høms her joint employers. *Id.* ¶ 26. Therefore, GAP and the Høms have a sufficiently close relationship such that plaintiff should have understood that "a contractual obligation" to arbitrate with GAP would constitute "a contractual obligation" to arbitrate with the Høms. *Trump Corp.*, 453 F. Supp. 3d at 642.

Plaintiff raises two arguments in opposition, both of which are foreclosed by Second Circuit precedent. First, plaintiff claims only corporate relationships, such as "subsidiaries, affiliates, agents, and other related business entities," are sufficiently close to trigger estoppel. Opp'n 12–13. But the Second Circuit explicitly has recognized that estoppel may extend "beyond situations involving affiliated corporate entities." *Ross v. Am. Exp. Co.*, 547 F.3d 137, 145 (2d Cir. 2008). Second, plaintiff asserts that the Host Family-Au Pair Agreement evinces a clear intent not to require arbitration of claims between plaintiff and the Høms such that estoppel does not apply. Opp'n 10–12. But the Second Circuit has acknowledged that the mere existence of a separate contract between the parties that lacks an arbitration clause does not preclude estoppel when the "intertwined-ness" and relationship factors otherwise are met. *See Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co.*, 271 F.3d 403, 404–08 (2d Cir. 2001). Therefore, plaintiff's arguments fail, and plaintiff is estopped from refusing to arbitrate her claims with the Høms.

## II. The Høms Have Not Waived Their Right to Compel Arbitration.

Nevertheless, plaintiff argues that defendants have waived their right to compel arbitration by waiting more than seven months after the case was filed to move for such relief and by

responding to plaintiff's discovery requests. Opp'n 13–14. "[T]here is a strong presumption in favor of arbitration[, and] waiver of the right to arbitration is not to be lightly inferred." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 104–05 (2d Cir. 2002) (citation omitted). Three factors inform the waiver analysis: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010) (citation and quotation marks omitted).

Here, the Høms waited more than seven months to file a motion to compel arbitration, but "[i]t is beyond question that defendants' delay in seeking arbitration during approximately eight months of pretrial proceedings is insufficient by itself to constitute a waiver of the right to arbitrate." *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985). As to the amount of litigation so far, the Høms have merely "entered into an initial case management plan and exchanged initial discovery." Reply 10. They have not filed any dispositive motions, *id.*, and the magistrate judge has stayed discovery pending a decision on the instant motion, Text Order (May 20, 2021). These actions reflect minimal participation in litigation and have not caused any prejudice to plaintiff beyond "pretrial expense and delay" which "without more, do not constitute prejudice sufficient to support a finding of waiver." *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995). Weighing all three factors, I find that the Høms have not waived their right to compel arbitration.

Plaintiff's contrary invocation of *Trump Corp.* is misplaced. There the court found that the defendants had waived their right to compel arbitration not only because they had waited eight months to file such a motion but also because they had brought multiple motions, including a losing dispositive motion to dismiss, and had conducted significant discovery. *Trump Corp.*, 453

F. Supp. 3d at 644. The defendants' activity in that case far exceeded the Høms' minimal participation in discovery here. Therefore, *Trump Corp.*'s reasoning does not apply, and I cannot conclude that the Høms have waived their right to compel arbitration.

## CONCLUSION

For the foregoing reasons, I grant defendants' motion to compel arbitration, and I stay this action pending the outcome of those proceedings.[4] *See Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015).

SO ORDERED.

                                                                      /s/
                                                Allyne R. Ross
                                                United States District Judge

Dated:       July 1, 2021
               Brooklyn, New York

---

[4] Because I grant defendants' motion to compel arbitration, I need not address their motion to dismiss.